**GONZALES et al. v. LAUGHLIN,**
**District Judge, et al.**
No. 12547.

Court of Civil Appeals of Texas.
San Antonio.
March 4, 1953.

H. P. Guerra, Jr., Rio Grande City, Cox, Patterson & Smith, San Antonio, Trueheart, McMillan & Russell, San Antonio, for relators.

Raymond, Algee, Alvarado, Kazen & Woods, Laredo, A. J. Vale, Rio Grande City, Judge C. Woodrow Laughlin, Alice, Frank R. Nye, Jr., Rio Grande City, for respondents.

PER CURIAM.

This is an original proceeding instituted in this Court under the provisions of Article 1824, Vernon's Ann.Tex.Stats., seeking a writ of mandamus directing the Hon. C. Woodrow Laughlin, District Judge of the 79th District Court, to proceed to trial in an election contest, being No. 2723, styled Manuel Gonzales, Jr.; v. M. J. Rodriguez, now pending upon the docket of the District Court of Starr County, Texas. The contest involves an election held on March 29, 1952, to determine if the Grulla Independent School District should be consolidated with the Rio Grande City Independent School District. The case, upon another phase, has heretofore been considered by us. See, Gonzales v. Rodriguez, Tex.Civ.App., 250 S.W.2d 253.

In December, 1952, the Hon. Sam G. Reams, then District Judge of the 79th District, was not in attendence upon the Starr County District Court and Hon. Truett Hubbard, a practicing attorney of the Texas bar, was elected as a special district judge. The Grulla-Rio Grande City School case was called and a motion for continuance filed under the provisions of Article 2168a, Vernon's Ann.Tex.Stats., as Hon. A. J. Vale, one of counsel for contestees, was a member of the State Legislature which would convene in January of 1953.[1]

This motion was granted by the special district judge in an order expressly reciting that the same "was made solely as a matter of law under the mandatory provisions of this statute (Article 2168a), and not as an exercise of discretion."

The Statute provides that:

"In all suits, either civil or criminal, or in matters of probate, pending in any court of this State at any time within thirty (30) days of a date when the Legislature is to be in Session, or at any time the Legislature is in Session, it shall be mandatory that the court continue such cause if it shall appear to the court, by affidavit, that any party applying for such continuance, or any attorney for any party to such cause, is a Member of either branch of the Legislature, and will be

[1] This statute was carefully considered by the Supreme Court in Mora v. Ferguson, District Judge, 145 Tex. 498, 199 S.W.2d 759.

or is in actual attendance on a Session of the same. * * *"

Relators assert that the statute applies to matters of probate, criminal suits and civil suits, and that obviously an election contest is neither a matter of probate or a criminal suit. They point out that long before the Legislature adopted the statute in question, it had also been decided by the Supreme Court that an election contest was not a civil suit. It is contended that the Legislature must be presumed to have selected the wording employed in the statute advisedly and that its intention as gathered from the language used was to omit election contests from the operation of the statute.[2] It is further urged that the writ should therefore issue under authority of Wright v. Broeter, District Judge, 145 Tex. 142, 196 S.W.2d 82, wherein the Supreme Court held that a writ of mandamus could issue commanding a district judge to proceed to trial in an election contest under the provisions of Article 1734, relating to the original jurisdiction of the Supreme Court, which is similar in wording to Article 1824, which is directly applicable to this proceeding.[3]

■ The record, however, discloses a circumstance which in our opinion should preclude the issuance of the writ upon the present application. It appears that on January 1, 1953, the Hon. C. Woodrow Laughlin succeeded the Hon. Sam G. Reams ·(for whom the special judge was sitting when the order of continuance was rendered) as Judge of the 79th District Court. A court is a continuous judicial instrumentality unaffected by the changes of personnel of the presiding judge and ordinarily we would presume, without further inquiry, that an order of a court would remain in force according to its terms, until carried out or set aside by direction of higher authority. However, in the present case, relators in their application say that the present district judge has stated orally and informally to counsel that he believed that the continuance order of the special judge was valid. Respondents' reply to the application contains a certificate signed by the district judge, which in part reads as follows:

"I may have had informal conversations with some of contestants' (relators here) counsel in which I may have expressed the opinion that the Order of Continuance granted by Special Judge Hubbard was a valid and binding order, but I have never taken any official action with regard thereto. If such a Motion (to vacate the order of continuance) were presented to me in the proper manner, I would give it full and careful judicial consideration."

■ While we agree with counsel for relators that it is not necessary as a predicate for this Court's taking action to "ask the trial judge on Wednesday if he meant what he said in his order entered on Monday," yet, where there is a change of personnel on the court, it is deemed appropriate to ascertain the official (rather than the informal) attitude of the new judge relative to a stay order delaying trial before proceeding with a mandamus action in a higher court. This procedure was followed by the Supreme Court in the recent case of

---

2. The classification of the election contest as a legislative proceeding rather than a judicial proceeding seems to have been established in Texas from an early date. Williamson v. Lane, 1879, 52 Tex. 335; State ex rel. Jennett v. Owens, 1885, 63 Tex. 261, wherein the distinction between the election contest and the suit for office is discussed. In DeShazo v. Webb, 1938, 131 Tex. 108, 113 S.W.2d 519, 523, an election which involved no office but had reference to a school district consolidation was at issue. The Supreme Court regarded the statutes relating to election contests as permitting the maintenance of

a "legislative action" and not a "civil suit." The Court said, "The jurisdiction conferred upon the district courts to hear and determine 'contested elections' is legislative in its nature. * * * In other words, we have already demonstrated that the power and jurisdiction to hear and determine a contested election action is the power and jurisdiction to exercise a legislative function, and that it is not a civil suit."

3. Upon this point, respondents cite Barnett v. Sutton, District Judge, 31 S.W. 2d 887, by the El Paso Court of Civil Appeals.

Saenz v. Sanders, District Judge, Tex.Sup., 245 S.W.2d 483, as appears from the opinion.[4]

We think the trial judge's certificate overcomes the presumption naturally arising from the continuance order that the judge will not of his own volition proceed to trial in the pending election contest. The application for writ of mandamus is accordingly denied without prejudice, however, to relators' right to renew their demand in the event the trial judge, upon proper application, should refuse to set the case for trial by reason of the existence of the order of continuance.

Application for mandamus denied.

4. The Court "notified relator's attorney that if he would request Judge Walter E. Loughridge, the successor to Judge Sanders, to proceed to trial and judgment, and if Judge Loughridge refused to do so, he could then amend his application, and that if his amendment disclosed the fact that after being requested to do so Judge Loughridge had refused to set the case for trial, the mandamus proceeding would be considered by the court on its merits." Saenz v. Sanders, Tex. Sup., 245 S.W.2d 483, 484.